IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONZELL WARD, | ) | CASE NO.  1:19-CV-02448-JRK |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP, II |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN DAVID W. GRAY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Donzell Ward ("Ward" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Ward is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Ward*, Cuyahoga County Court of Common Pleas Case No. CR-17-619429-A.   For the following reasons, the undersigned recommends that the Petition be DISMISSED IN PART AND DENIED IN PART.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Ward's conviction as follows:

1

{¶3} On August 1, 2017, a Cuyahoga County Grand Jury indicted Ward for one count of rape with one- and three-year firearm specifications and a sexually violent predator specification, one count of gross sexual imposition with one- and three-year firearm specifications, and one count of kidnapping with one- and three-year firearm specifications, a sexual motivation specification, and a sexually violent predator specification. The charges stemmed from an incident that occurred in 2000. According to the police report, which was included as part of the presentence investigation report, the victim was waiting at a bus stop on her way to work when Ward approached her, pointed a gun at her head, and told her to get into his car. He then drove the victim to a parking lot and raped her.

{¶4} In January 2018, Ward agreed to plead guilty to rape with a one-year firearm specification and kidnapping with a sexual motivation specification. In exchange, the state dismissed the count for gross sexual imposition and deleted the remaining specifications for the rape and kidnapping counts.

{¶5} In February 2018, the trial court sentenced Ward to nine years for rape, which was to be served consecutively to a one-year sentence for the firearm specification. As to the kidnapping count, the trial court sentenced Ward to nine years, which was to be served consecutive to the sentences for rape and the firearm specification, giving Ward an aggregate sentence of 19 years and a mandatory 5 years of postrelease control.

{¶6} The trial court then held a sexual offender classification hearing pursuant to H.B. 180 and classified Ward as a sexual predator, requiring Ward to personally register every 90 days for life. The trial court explained that as part of the registration, Ward had to periodically verify his home address, employment, and education and also explained the consequences of failing to properly register or verify those details.

{¶7} It is from these judgments that Ward now appeals.

*State v. Ward*, 2018-Ohio-5354, 2018 WL 6921883, at *1 (Ohio Ct. App. Dec. 27, 2018).

## II.     Procedural History

### A.     Trial Court Proceedings

On August 1, 2017, the Cuyahoga County Grand Jury indicted Ward on the following charges:  (1) one count of rape, in violation of O.R.C. § 2907.02(A)(2), including two firearm specifications and a sexually violent predator specification; (2) one count of gross sexual imposition, in violation of O.R.C. § 2907.05(A)(1), with two firearm specifications and a sexually violent predator specification; and (3) one

2

count of kidnapping, in violation of O.R.C. § 2905.01(A)(4), with two firearm specifications, a sexual motivation specification, and a sexually violent predator specification.  (Doc. No. 6-1, Ex. 1.)  Ward entered pleas of not guilty to all charges.  (*See* Doc. No. 6-1, Ex. 2.)

On January 10, 2018, Ward withdrew his not guilty pleas.  (Doc. No. 6-1, Ex. 2.)  On the prosecutor's recommendation, the trial court amended Count One to remove the three-year firearm specification and sexual violent predator specification and amended Count Three to remove the one-year and three-year firearm specifications and sexual violent predator specification.  (*Id.*)  Count Two was nolled.  (*Id.*)  Ward pled guilty to Counts One and Three as amended.  (*Id.*)  The trial court accepted Ward's pleas and found him guilty.  (*Id.*)  The trial court scheduled a sentencing hearing along with an HB 180 hearing since the case fell under Megan's Law.  (*Id.*)

On February 7, 2018, the trial court held a sentencing hearing.  (Doc. No. 6-1, Ex. 3.)  Ward was sentenced to serve an aggregate term of 19 years' incarceration.  (*Id.*)  In addition, after the HB 180 hearing, the trial court classified Ward as a sexual predator.  (*Id.*)  Appellate counsel was appointed for the purposes of the HB 180 hearing only.  (*Id.*)

**B.    Direct Appeal**

On March 7, 2018, Ward, through counsel, filed a timely notice of appeal to the Eighth District Court of Appeals.  (Doc. No. 6-1, Ex. 4.)

On May 3, 2018, the appellate court struck Ward's brief, as it exceeded the scope of appellate counsel's appointment by addressing issues beyond Ward's sexual offender classification.  (Doc. No. 6-1, Ex. 5.)  The appellate court directed counsel to file an amended appellant's brief.  (*Id.*)  The appellate court explained retained counsel could not include a supplemental brief as to Ward's plea and sentence because the trial court's appointment of appellate counsel was limited to the H.B. 180 sexual offender

3

classification. (*Id.*) Therefore, Ward needed to file a motion for delayed appeal if he wished to appeal the plea and sentencing hearing. (*Id.*)

On May 7, 2018, Ward filed a motion for leave to file a delayed appeal to challenge his entire plea and sentence, which the appellate court granted. (Doc. No. 6-1, Ex. 9-10.) The appellate court consolidated the appeals for purposes of hearing and disposition, although the appeals were to be briefed separately. (Doc. No. 6-1, Ex. 10.)

On May 9, 2018, in his amended appellate brief by appointed appellate counsel, Ward raised the following assignments of error:

I.   THE COURT ERRED IN CLASSIFYING DONZELL WARD A SEXUAL PREDATOR.

(Doc. No. 6-1, Ex. 6.) The State filed a brief in response. (Doc. No. 6-1, Ex. 7.)

On August 31, 2018, retained counsel filed Ward's corrected appellate brief and raised the following assignments of error:

I.   DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE CONFLICTING ADVICE CONCERNING WHETHER THE OFFENSE WAS NON-PROBATIONABLE[.]

II.  DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHTS WHEN HIS SENTENCE WAS BASED UPON JUDICIAL FACTFINDING.

III. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT.

(Doc. No. 6-1, Ex. 11.) The State filed a brief in response. (Doc. No. 6-1, Ex. 12.)

On December 27, 2018, the state appellate court affirmed Ward's convictions. (Doc. No. 6-1, Ex. 13.) *See also State v. Ward*, 2018-Ohio-5354, 2018 WL 6921883, at *1.

On February 8, 2019, Ward, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 6-1, Ex. 14.) In his Memorandum in Support of Jurisdiction, Ward raised the following Propositions of Law:

4

I.     When a trial court attempts to comply with Ohio Revised Code 2929.11 and 2929.12, in imposing sentence goes beyond the dictates of that statute and enters into judicial factfinding, more like those of the former R.C. 2929.14, does this violate a defendant's Sixth Amendment guarantees of the United States Constitution?

II.    Does a plea and subsequent sentence become invalid when the trial court violates the Due Process Clause by misleading a criminal defendant prior to entering a plea by stating and elucidating to the fact that the statute provides that the offense is probationable, which is contradicted by the statute?

III.   The Appellant was denied Effective Assistance of Trial Counsel in violation of the Sixth Amendment guaranteed by the United States Constitution for multiple failures.   Should Appellate Courts consider all grounds raised as it relates to ineffective assistance of counsel even when an Appellant accepts a plea to preserve justice and fairness of the representation of counsel?

IV.    Should trial courts be required to make findings to comply with Megan's Law for those offenders who are subject to the classification system for sexual-offenders, as it would otherwise violate the Due Process Clause and guarantees protected by the United States Constitution?

(Doc. No. 6-1, Ex. 15.)  The State did not file a response.

On May 1, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 6-1, Ex. 16.)

## C.     Federal Habeas Petition

On October 4, 2019,[1] Ward filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**:  THE TRIAL COURT DID NOT COMPLY WITH OHIO REVISED CODE 2929.11 AND 2929.12, IN IMPOSING SENTENCE THAT WENT BEYOND THE DICTATES OF THOSE STATUTES AND ENTERED INTO JUDICIAL FACTFINDING, MORE LIKE THE FORMER OHIO REVISED CODE 2929.14 IN VIOLATION OF THE GUARANTEES OF THE UNITED STATES CONSTITUTION, SIXTH AMENDMENT AND DUE PROCESS.

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until October 21, 2019, Ward states that he placed it in the prison mailing system on October 4, 2019.  (Doc. No. 1 at 19.)  Thus, the Court will consider the Petition as filed on October 4, 2019.

**GROUND TWO**: AS PETITIONER'S GUILTY PLEA WAS NOT KNOWINGLY AND VOLUNTARILY MADE UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. [SIC] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS THE TRIAL COURT VIOLATED THE DUE PROCESS CLAUSE BY MISLEADING PETITIONER PRIOR TO ENTERING THE PLEA BY STATING THAT THE STATUTE PROVIDES THAT THE OFFENSE IS PROBATIONABLE, WHICH IS CONTRADICTED BY STATUTE.

**GROUND THREE:** PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AMENDMENT FOR MULTIPLE FAILURES. THE CUMULATIVE EFFECT OF THESE FAILURES AMOUNTS TO INEFFECTIVE ASSISTANCE.

**GROUND FOUR:**  THE TRIAL COURT ERRED WHEN IT DESIGNATED PETITIONER A SEXUAL PREDATOR CLASSIFICATION UNDER MEGAN'S LAW, AS THIS DETERMINATION WAS ARBITRARILY MADE IN VIOLATION OF THE DUE PROCESS CLAUSE, EX POST FACTO CLAUSE AND THE CONSTITUTION, ARTICLE 1 § 10.

(Doc. No. 1.)

On December 13, 2019, Warden David Gray ("Respondent") filed his Return of Writ. (Doc. No. 6.)  Ward filed a Traverse on February 6, 2020.  (Doc. No. 8.)

### III. Waiver by Guilty Plea

Respondent asserts, "Several of Ward's allegations of ineffective assistance of counsel are unrelated to whether his guilty plea was knowing, voluntary, and intelligent," and since Ward entered an unconditional guilty plea, are waived.  (Doc. No. 6 at 6-7.)

Ward responds that his guilty plea was not made knowingly, voluntarily, and intelligently.  (Doc. No. 8 at 9-10.)

In Ground Three of his habeas petition, Ward asserts he was denied the effective assistance of trial counsel for "multiple failures," specifically: (1) counsel was unprepared for Ward to enter a plea at the hearing, as at no time did Ward and trial counsel "have an opportunity to completely and adequately discuss entering a plea"; (2) "as counsel did not adequately inform and instruct Ward as to entering a guilty plea, there was obvious concerns and errors at the hearing that were not resolved before the trial

court erroneously accepted the plea as the plea was not entered into knowingly, intelligently and voluntarily"; (3) "counsel failed to file a motion to dismiss due to pre-indictment delay and instead insisted that Ward enter a plea"; (4) although Ward informed counsel numerous times that Ward "insisted that he was innocent of the crimes alleged," counsel still allowed Ward to enter a guilty plea; (5) "counsel did not prepare a defense to the charges prior to trial or prior to the hearing upon which Ward entered a plea which Ward could reasonably rely on"; (6) "counsel did not object to the prosecutor's statements about the effects the crime has on the victim at sentencing"; (7) "counsel improperly agreed that the rape and kidnapping counts would not merge for the purposes of sentencing"; (8) counsel was ineffective during the Crim.R. 11 hearing by "failing to advise Ward as to the possible penalties of pleading guilty"; (9) as there was insufficient evidence in this case, "counsel was ineffective when he allowed Ward to enter a guilty plea that was not based on sufficient evidence"; and (10) the cumulative effect of these errors was prejudicial.  (Doc. No. 1 at 11-12.)

As the Supreme Court has made clear:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  *See also Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) ("Thus, after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself.") (citing *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012)).

As discussed *supra*, Ward pled guilty to amended charges of rape and kidnapping.  (Doc. No. 6-1, Ex. 2.)  The trial court accepted Ward's pleas, finding the pleas were knowingly, intelligently, and voluntarily made, and found Ward guilty of the charges.  (Doc. No. 6-1, Ex. 17, PageID # 207.)  Here,

7

several of Ward's allegations of ineffective assistance of counsel do not challenge the "voluntary and intelligent character of the guilty plea." But by pleading guilty and signing the plea agreement in this case, Ward waived such challenges. Therefore, the undersigned recommends finding Ward waived any claims of ineffective assistance of counsel unrelated to the knowing and voluntary nature of his guilty pleas by pleading guilty.

### IV. Exhaustion and Procedural Default

#### A.    Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."

---

"prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

*Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6ᵗʰ Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."

10

*Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6ᵗʰ Cir. Aug. 29, 2012).

**B.      Application to Petitioner**

**1.      Ground Three**

In Ground Three of his habeas petition, Ward asserts he was denied the effective assistance of trial counsel for "multiple failures," specifically: (1) counsel was unprepared for Ward to enter a plea at the hearing, as at no time did Ward and trial counsel "have an opportunity to completely and adequately discuss entering a plea"; (2) "as counsel did not adequately inform and instruct Ward as to entering a guilty plea, there was obvious concerns and errors at the hearing that were not resolved before the trial court erroneously accepted the plea as the plea was not entered into knowingly, intelligently and voluntarily"; (3) "counsel failed to file a motion to dismiss due to pre-indictment delay and instead insisted that Ward enter a plea"; (4) although Ward informed counsel numerous times that Ward "insisted that he was innocent of the crimes alleged," counsel still allowed Ward to enter a guilty plea; (5) "counsel did not prepare a defense to the charges prior to trial or prior to the hearing upon which Ward entered a plea which Ward could reasonably rely on"; (6) "counsel did not object to the prosecutor's statements about the effects the crime has on the victim at sentencing"; (7) "counsel improperly agreed that the rape and kidnapping counts would not merge for the purposes of sentencing"; (8) counsel was ineffective during the Crim.R. 11 hearing by "failing to advise Ward as to the possible penalties of pleading guilty"; and (9) as there was insufficient evidence in this case, "counsel was ineffective when he allowed Ward to enter a guilty plea that was not based on sufficient evidence."  (Doc. No. 1 at 11-12.)  Ward asserts the cumulative effect of trial counsel's errors was prejudicial.  (*Id.* at 12.)

11

Respondent argues Ward failed to argue the ineffective assistance of trial counsel impacted his guilty plea to the state courts and cannot now adjust his claim to include such an argument. (Doc. No. 6 at 8-11.) In addition, Respondent asserts several of Ward's ineffective assistance of counsel claims were never presented to any state court. (*Id.* at 12.) One ineffective assistance of counsel claim was presented for the first time to the Supreme Court of Ohio. (*Id.* at 12-13.) For these reasons, Respondent argues Ground Three is procedurally defaulted, and there is no cause and prejudice to excuse the default. (*Id.* at 8-15.)

For the first time in his Traverse, Ward asserts a claim of ineffective assistance of appellate counsel.[3] (Doc. No. 8 at 12.) Ward argues, "That the Petitioner is being prejudiced by the incompetence of his appellate counsel because it is perceived that the Petitioner failed to argue that ineffective assistance of counsel impacted his guilty plea or that this was not raised on direct appeal is self-evident and shows specifically 'cause and prejudice' **and** caused a miscarriage of justice." (*Id.*) (emphasis in original). Ward asserts that because *pro se* litigants must "be given considerable leeway" and because he is not an attorney with legal training, his claims are "cognizable for federal review and does not trigger *Edwards v. Carpenter*, 529 U.S. 446 (2000)." (*Id.* at 12-13.)

Before the state appellate court, Ward asserted the following omissions by trial counsel that he alleged constituted ineffective assistance of counsel: (1) defense counsel failed to file a motion to dismiss based on the "unreasonable delay" in bringing the case; (2) counsel "should have investigated the case more thoroughly"; (3) "counsel did not object to the court basing its sentence on an unsupported claim by the prosecutor concerning the claimed effect that this event had on the claimed victim, L.J."; and (4) defense counsel agreed the rape and kidnapping charges merged for purposes of sentencing despite the

---

[3] Claims raised for the first time in a Traverse and not a habeas petition are not properly before the Court. *Royster v. Warden*, No. 18-3362, 2018 WL 8138770, at *2 (6th Cir. Aug. 23, 2018) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jalowiec v. Bradshaw*, 657 F.3d 293, 312 (6th Cir. 2011), *as amended* (Nov. 23, 2011); *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009)).

fact that defense counsel argued there was no kidnapping as L.J. got in Ward's car because she knew the defendant.  (Doc. No. 6-1, Ex. 11, PageID # 134-35.)

Before the Supreme Court of Ohio, Ward argued for the first time that he received ineffective assistance of counsel because trial counsel failed "to advise [Ward] as to the possible penalties of pleading guilty."  (Doc. No. 6-1, Ex. 15, at PageID # 179.)  Ward also reasserted the previous four bases for ineffective assistance of counsel he had raised to the state appellate court.  (*Id.* at PageID # 178-79.)

The record reveals that Ward failed to raise the following ineffective assistance of counsel claims to the state courts: (1) counsel was unprepared for Ward to enter a plea at the hearing, as at no time did Ward and trial counsel "have an opportunity to completely and adequately discuss entering a plea"; (2) "as counsel did not adequately inform and instruct Ward as to entering a guilty plea, there was obvious concerns and errors at the hearing that were not resolved before the trial court erroneously accepted the plea as the plea was not entered into knowingly, intelligently and voluntarily"; (3) although Ward informed counsel numerous times that Ward "insisted that he was innocent of the crimes alleged," counsel still allowed Ward to enter a guilty plea; (4) counsel was ineffective during the Crim.R. 11 hearing by "failing to advise Ward as to the possible penalties of pleading guilty"; and (5) as there was insufficient evidence in this case, "counsel was ineffective when he allowed Ward to enter a guilty plea that was not based on sufficient evidence."  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Engle*, 456 U.S. at 125 n. 28.  As Ward failed to raise these ineffective assistance of trial counsel claims on direct appeal, as they could have been raised, they are procedurally defaulted.  *Id.*

For the first time on habeas review, Ward ties trial counsel's failure to file a motion to dismiss and failure to investigate prevented his guilty plea from being knowing, voluntary, and intelligent.  Ward argues these claims were "inherent" in the errors he raised before the state courts.  (Doc. No. 8 at 11.)  "It

is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "[a] petitioner fairly presents a federal habeas claim to the state courts only if he 'asserted both the factual and legal basis for his claim.'" *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)), *abrogated on other grounds as recognized in Peoples v. Laffer*, 734 F.3d 503 (6th Cir. 2013). The Sixth Circuit has held "'that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.'" *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)). Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim. *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001). Therefore, Ward's claims that trial counsel's failure to file a motion to dismiss and failure to investigate prevented his guilty plea from being knowing, voluntary, and intelligent are procedurally defaulted.

Ward's claim that he received ineffective assistance of counsel because trial counsel failed "to advise [Ward] as to the possible penalties of pleading guilty" is also procedurally defaulted because he raised it for the first time to the Supreme Court of Ohio. "[U]nder Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL 6311235, at *6 (N.D. Ohio June 22, 2016) (citations omitted), *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016). As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir.1982)) (additional internal citations omitted).

14

Therefore, the portions of Ground Three related to the voluntary and intelligent character of Ward's plea[4] are procedurally barred unless Ward "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

### a. Cause and Prejudice

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016). However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

Ward argues ineffective assistance of appellate counsel serves as cause and prejudice to excuse the procedural default. (Doc. No. 8 at 12.) Ward argues, "That the Petitioner is being prejudiced by the incompetence of his appellate counsel because it is perceived that the Petitioner failed to argue that ineffective assistance of counsel impacted his guilty plea or that this was not raised on direct appeal is self-evident and shows specifically 'cause and prejudice' **and** caused a miscarriage of justice." (*Id.*)

---

[4] Those ineffective assistance of counsel claims not related to the voluntary and intelligent character of Ward's plea are waived, as explained *supra*.

15

(emphasis in original).  Ward asserts that because *pro se* litigants must "be given considerable leeway" and because he is not an attorney with legal training, his claims are "cognizable for federal review and does not trigger <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000)."  (*Id.* at 12-13.)

However, Ward failed to exhaust any ineffective appellate counsel grounds in a Rule 26(B) application.  *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *2 (6th Cir. July 17, 2017).  State law will no longer allow him to pursue these claims.  *See id.*  "Because [Ward] is well outside the ninety-day window of Rule 26(B), that claim is itself procedurally defaulted, *see Coleman*, 501 U.S. at 735 n.1, and cannot serve as cause to excuse [his] original procedural default.  *See Carpenter*, 529 U.S. at 453."  *Id.*

Contrary to Ward's arguments, a petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  As Ward fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

### b.  Actual Innocence

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a

16

concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

While Ward asserts he is actually innocent (Doc. No. 8 at 18), he fails to present any new, reliable evidence of his innocence.  (Doc. Nos. 1, 8.)  Furthermore, Ward entered a guilty plea in this case.  "Pleading guilty does not entirely preclude a petitioner from claiming actual innocence at habeas proceedings; however, guilty pleas and partial confessions 'seriously undermine' the claim.  *Smith v. Warden*, Case No. 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. June 26, 2018) (citations omitted).  By pleading guilty, "the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  *United States v. Broce*, 488 U.S. 563, 570 (1989).  Therefore, the Court finds Ward has failed to demonstrate the procedural default of Ground Three should be excused on the basis of actual innocence.

### 2.    Ground Four

In Ground Four, Ward argues "[t]he trial court erred when it designated [him] a sexual predator" under Megan's Law, "as this determination was arbitrarily made in violation of the Due Process Clause, *Ex Post Facto* Clause, and the Constitution, Article 1 § 10." (Doc. No. 1 at 14.)

Respondent asserts that Ground Four is not cognizable in habeas corpus proceedings.  (Doc. No. 6 at 39.)

In his Traverse, Ward states he stands on his Petition, but he then argues that "the whole Sex-Offender Registration is inherently unconstitutional, not just for the Petitioner, but for everyone," and that "the SORN violates Due Process, Cruel and Unusual Punishment, and other related Constitutional Rights and as such is void." (Doc. No. 8 at 33.)  As stated earlier, claims raised for the first time in a Traverse are not properly before the Court.

As another court in this Circuit recently explained:

> In order to have properly exhausted a federal habeas claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "the legal and factual basis of the claim must be 'fairly presented' to the state courts so that they have an opportunity to remedy the alleged constitutional violation." *Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 860 (S.D. Ohio 2011) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

*Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019).

The record reflects Ward raised his sexual predator classification claim solely as a matter of state law before the appellate court.  (Doc. No. 6-1, Ex. 6.)  While Ward invoked the due process clause on appeal to the Supreme Court of Ohio (Doc. No. 6-1, Ex. 15), as explained *supra*, the Supreme Court of Ohio will not consider issues that were not first raised to the appellate court.  Therefore, Ward's sexual predator claim is procedurally defaulted unless there is cause and prejudice to excuse the default, or Ward demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice.

As Respondent addressed this claim on non-cognizability grounds, Ward did not argue there was any cause and prejudice to excuse the procedural default.  As explained in detail above, even if Ward claimed ineffective assistance of appellate counsel constituted cause and prejudice to excuse the procedural default, Ward failed to exhaust any ineffective appellate counsel grounds in a Rule 26(B) application and state law will no longer allow him to pursue this claim.

Contrary to Ward's arguments, a petitioner's *pro se* status or lack of legal training is insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  As Ward fails to show cause, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. at 533–34.

While Ward asserts he is actually innocent (Doc. No. 8 at 18), he fails to present any new, reliable evidence of his innocence.  (Doc. Nos. 1, 8.)  Furthermore, Ward entered a guilty plea in this case.

18

"Pleading guilty does not entirely preclude a petitioner from claiming actual innocence at habeas proceedings; however, guilty pleas and partial confessions 'seriously undermine' the claim. *Smith v. Warden*, Case No. 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. June 26, 2018) (citations omitted).  By pleading guilty, "the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  *United States v. Broce*, 488 U.S. 563, 570 (1989).  Therefore, the Court finds Ward has failed to demonstrate the procedural default of Ground Four should be excused on the basis of actual innocence.

## V. Non-cognizability

As stated above, Respondent asserts that Ground Four is not cognizable in habeas corpus proceedings.  (Doc. No. 6 at 39.)  Ward offers no response to the argument that this claim is non-cognizable.  (Doc. No. 8.)

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is *in custody in violation of the Constitution or laws or treaties of the United States*."  28 U.S.C. § 2254 (emphasis added).  *See also Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002).  The Sixth Circuit has held that the classification of a defendant as a sexual predator is a collateral disability resulting from a conviction and, thus, does not satisfy the 'in custody' requirement of federal habeas corpus.  *See Leslie*, 296 F.3d at 523 (finding court lacked jurisdiction to grant relief on claim challenging petitioner's adjudication as a sexual predator under Ohio's sexual-predator registration statute because such classification is a "collateral consequence" of conviction and does not constitute a "severe and immediate restraint on his liberty sufficient to satisfy the 'in custody' prerequisite for federal habeas corpus review").  *See also Thomas v. Morgan*, 109 F. Supp. 2d 763, 767 (N.D. Ohio 2000); *Fisher v. Frizzell,* 2018 WL 5784548, at *1-2 (S.D. Ohio Nov. 5, 2018); *Doty v. Warden, Toledo Correctional Inst.,* 2013 WL 429100, at *7 (S.D. Ohio Feb.

1, 2013); *Moviel v. Smith*, 2010 WL 148141 at * 2 (N.D. Ohio Jan. 12, 2010); *Bevins v. Brunsman*, 2009 WL 5612338, at *12 (S.D. Ohio Dec. 17, 2009); *Booker v. Anderson*, 2007 WL 1731282, at *6 and n. 8 (N.D. Ohio June 14, 2007).

Here, although Ward is currently incarcerated, he is not "in custody" by virtue of the fact that he is classified as a sexual predator who must register with authorities upon his release from prison. *See Leslie*, 296 F.3d at 523 (finding that "[a]lthough Leslie is currently incarcerated, he is not seeking relief from the conviction or sentence upon which his confinement is based," but, rather, is seeking relief from his sexual predator classification, which is not cognizable on federal habeas review). *See also Moviel*, 2010 WL 148141, at *2 (finding that, even if habeas petitioner is currently incarcerated, a challenge to his adjudication as a sexual predator fails to satisfy the "in custody" requirement necessary to obtain habeas relief). Rather, it is well established that Ward's designation as a sexual predator is a collateral consequence of his conviction and does not satisfy the "in custody" requirement for federal habeas corpus relief. *Id*. Therefore, because Ward's fourth ground for relief only challenges his sexual predator classification, in addition to being procedurally defaulted, this claim is also non-cognizable.

Further, to the extent Ground Four contends that Ward's sexual predator classification does not comport with Ohio state court decisions and statutes, this ground should be dismissed for the additional reason that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Indeed, it is well established that, in habeas proceedings, it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," rather a federal court must only determine "whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68. Thus, to the extent Ground Four asserts Ward is entitled to habeas relief

20

because the state courts misapplied Ohio law, this ground does not state a claim that is cognizable in these federal habeas proceedings.

## VI. Review on the Merits

### A.    Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a

specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal

quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 3.    Ground One

In Ground One, Ward argues the trial court failed to comply with O.R.C. §§ 2929.11 and 2929.12 "in imposing [a] sentence that went beyond the dictates of those statutes and entered into judicial factfinding . . . in violation of the guarantees of the United States Constitution, Sixth Amendment and Due Process." (Doc. No. 1 at 6.)

Respondent asserts that to the extent Ward argues the trial court failed to comply with the mandates of the Ohio Revised Code, such an argument is not cognizable on habeas review.  (Doc. No. 6 at 20.)  In addition, "as [the] trial court was free to impose any sentence it believed was appropriate without the requirement of any additional fact finding, Ward's sentence does not implicate the rulings set forth within *Apprendi* and *Blakely*." (*Id.* at 20-21.)  Respondent argues that because of the Ohio Supreme Court's ruling in *State v. Foster*, 2006-Ohio 856, 845 N.E.2d 470 (Ohio 2006), "the Ohio sentencing statute is in compliance with the standards set forth in *Apprendi* and *Blakely*." (*Id.* at 21.)  Therefore, Ward's sentence is not contrary to clearly established federal law or an unreasonable application of Supreme Court precedent to the facts presented by this case. (*Id.* at 22.)

Ward argues his judicial fact-finding claim is a cognizable one under *Apprendi* and *Blakely*.  (Doc. No. 8 at 20.)  While Ward appears to state he does not assert a violation of state law, he then goes on to say that he "will not relitigate the state violations in this response other than to reassert the required Habeas review under these two above mentioned precedents."  (*Id.* at 21.)

23

The record reflects Ward raised a judicial fact-finding claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.[5] (Doc. No. 6-1, Ex. 11, 15.) The state appellate court considered this claim on the merits and found as follows:

> {¶15} In his first assigned error, Ward argues that he was denied his Sixth Amendment rights when the trial court sentenced him based upon its own factual findings. Specifically, Ward argues the trial court engaged in improper judicial fact-finding when it commented on the physical and mental injuries that the victim suffered. He argues that those facts were not included in the indictment or admitted by him and that they are based solely on "the prosecutor's rendition of unrelated facts[.]"

> {¶16} In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court held that a court cannot enhance a defendant's sentence based on factual findings unless those findings are made by a jury, the defendant stipulates to those facts, or the defendant consents to judicial fact-finding. *Apprendi* at 490, 120 S.Ct. 2348; *Blakely* at 310, 124 S.Ct. 2531.

> {¶17} Based on those decisions, the Ohio Supreme Court invalidated former R.C. 2929.14(B), (C), (E)(4) and 2929.19(B)(2) in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, finding that those subsections violated a defendant's Sixth Amendment rights because they required a trial court to make particular findings before imposing a maximum, consecutive sentence or more than the minimum sentence. *Id.* at syllabus.

> {¶18} The Ohio Supreme Court, however, did not invalidate R.C. 2929.11 and 2929.12, which set forth the purposes and principles of felony sentencing. *Id.* at ¶ 36 -42. The court found that while trial courts must carefully consider R.C. 2929.11 and 2929.12 when sentencing defendants convicted of felonies, they "have full discretion to impose a prison sentence within the statutory range" and are "no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences[.]" *Id.* at ¶ 100.

> {¶19} Corresponding with *Foster*, we have previously recognized that "R.C. 2929.11 and R.C. 2929.12 do not require judicial fact[-]finding; they direct trial courts to 'consider' certain enumerated factors." *State v. Ross*, 8th Dist. Cuyahoga No. 100708, 2014-Ohio-4566, ¶ 21, citing *State v. Townsend*, 8th

---

[5] The only judicial fact-finding claim presented to the state courts is that the trial court violated Ward's Sixth Amendment rights by engaging in judicial fact-finding. The claim that the trial court engaged in fact-finding that violated Ward's due process rights, raised for the first time on habeas review, is procedurally defaulted.

Dist. Cuyahoga No. 99896, 2014-Ohio-924; *Foster* at ¶ 42. Specifically, R.C. 2929.11(B) states that a felony sentence "must be * * * commensurate with and not demeaning to the seriousness of the crime and its impact on the victim[,]" and R.C. 2929.12(B)(2) requires a trial court to consider whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense."

{¶20} Ward argues that the trial court engaged in improper judicial fact-finding when it stated,

> And, you know, for this woman you changed her life that day. She'll never be the same. You altered her destiny that day. You altered her life. You interfered with the plan for her life. You cast a fear on her that she'll never shake. The PSI indicates that her statements are that you threatened to kill her if she told anybody. You threatened to kill her if she didn't cooperate with you. There's no question that you did this by force and by threat.

However, the presentence investigation report ("PSI") supports the trial court's statement. The PSI indicates that the victim received counseling for the attack and fears Ward. The PSI also contains the police report of the incident describing the threats of violence that Ward used against the victim. Therefore, we find that the trial court's comments as to the physical and mental injuries that the victim suffered did not constitute impermissible judicial fact-finding. Instead, pursuant to R.C. 2929.11(B) and 2929.12(B)(2), the trial court properly considered the victim's injuries detailed in the PSI as a factor that favored sentencing Ward to 19 years. Accordingly, we find no violation of Ward's Sixth Amendment rights and overrule Ward's first assignment of error.

*State v. Ward*, 2018-Ohio-5354, 2018 WL 6921883, at **3-4 (footnote omitted).

First, to the extent Ground One asserts a violation of Ohio law, such a claim is not cognizable on federal habeas review.  It is well-established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions."  *Id*. at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).

Until 2006, Ohio sentencing statutes required sentencing a defendant to minimum and concurrent terms of incarceration unless the sentencing court determined that certain factors mandated longer or

concurrent sentences. Those factors, described at O.R.C. § 2929.12, required judicial factfinding of the sort later found to be unconstitutional by *Blakely* and *Apprendi*. In *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), the Supreme Court of Ohio found this portion of the Ohio sentencing statutes to be unconstitutional and severed it from the rest of the sentencing regime. As a consequence of *Foster*'s judicial reconstruction of the Ohio sentencing statutes, the Ohio Supreme Court directed sentencing courts as follows: "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." *Foster*, 845 N.E.2d at 499.

Ward was sentenced to nine years' imprisonment on the body for rape and nine years' imprisonment for kidnapping. (Doc. No. 6-1, Ex. 3.) The court ordered the sentences to be served consecutively. (*Id.*) Under Ohio law, both rape and kidnapping are felonies of the first degree. O.R.C. §§ 2907.02, 2905.01. The penalty range in Ohio for a felony of the first degree at the time the incident occurred was three to ten years. (Doc. No. 6-1, Ex. 17, PageID # 199, 204-05.) Under the maximum terms allowed by law on the combined counts, including a firearm specification, Ward faced 21 years in prison. (*Id.* at PageID # 205.)

The state trial court entered Ward's sentence after the Ohio Supreme Court's decision in *Foster*. Because *Foster* allowed Ohio courts to sentence a defendant to any term within the appropriate felony range or to consecutive sentences without making any judicial findings of fact, it cannot be said that Ward's sentence violated the holdings in *Blakely* or *Apprendi*. *Blakely* and *Apprendi* prohibit a judge from sentencing a defendant to any sentence greater than the maximum sentence that may be imposed without making judicial findings of fact. The maximum sentence to which the court could have sentenced Ward without making judicial findings of fact was consecutive terms of ten years. Ward's sentence was,

26

therefore, within the range permitted by *Blakely* and *Apprendi*.  For this reason, Ward's first ground for relief is without merit and should be denied.

### 4.  Ground Two

In Ground Two, Ward argues that his guilty plea was not knowingly and voluntarily made under the Due Process Clause of the Fourteenth Amendment.  (Doc. No. 1 at 8.)  He asserts, "The trial court committed prejudicial error as the trial court violated the due process clause by misleading Petitioner prior to entering the plea by stating that the statute provides that the offense is probationable, which is contradicted by statute."  (*Id.*)

Respondent argues the plea transcript "reflects that Ward had clear understanding of all the penalties he would face upon a plea of guilty."  (Doc. No. 6 at 27.)  Therefore, Respondent asserts that the state appellate court's determination was not contrary to clearly established federal law or an unreasonable application of Supreme Court precedent to the facts presented by this case.  (*Id.*)

The record reflects Ward raised this claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.   (Doc. No. 6-1, Ex. 11, 15.)  The state appellate court considered this claim on the merits and found as follows:

> {¶8} In his second assigned error, Ward argues that he was denied due process of law because the trial court contradicted itself when it told him that he could possibly receive community control sanctions for rape during his plea hearing. Because Ward's remaining assignments of error could be rendered moot if his second assigned error concerning his plea is sustained, we will address his assignments of error out of order for ease of discussion.
>
> {¶9} A defendant must enter into a plea knowingly, intelligently, and voluntarily for it to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996), citing *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). To ensure the constitutionality of pleas, Crim.R. 11(C) sets forth specific procedures that trial courts must follow when accepting guilty pleas, covering the waiver of constitutional rights and the explanation of nonconstitutional rights. *See State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990) ("Ohio Crim.R. 11(C) was adopted in order to facilitate a more

27

accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review.").

{¶10} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *Cardwell at id.*

{¶11} Crim.R. 11(C)(2) provides in pertinent part that in felony cases the court may refuse to accept and shall not accept a plea of guilty without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶12} At the plea hearing, the trial court informed Ward that a conviction for rape is a "felony of the first degree, punishable by 3 to 10 years in prison, up to a $20,000 fine, [and] 5 years of mandatory postrelease control." It then told Ward that "Count 1 [rape] is a mandatory term of prison, so you cannot * * * receive community control on Count 1 under any possibility." Ward said he understood. The trial court then stated,

> If the court gave you what's called a split sentence, so that you went to prison on the mandatory term and then got community control on the balance, then the court could give you a community

28

control sanction on the other count, felony of the first degree, for up to 5 years; but if you violate that sentence, you could receive a prison term.

Ward, again, said he understood.

{¶13} We do not find that the trial court gave Ward conflicting information or "advice" as to whether his offense was "probationable." The trial court explicitly informed Ward that he was not eligible for community control sanctions, and Ward said that he understood. While the trial court touched upon the possibility of community control sanctions with a "split sentence," the trial court did not tell Ward that he was receiving a "split sentence" or contradict itself as to whether he was eligible for community control sanctions on the rape count. We therefore find that the trial court complied with Crim.R. 11.

{¶14} Accordingly, we overrule Ward's second assignment of error.

*State v. Ward*, 2018-Ohio-5354, 2018 WL 6921883, at **1-3.

Clearly established federal law regarding the due process requirements of guilty pleas provides that to be valid, a guilty plea must be made knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Determining whether a plea was made voluntarily requires the Court to evaluate all of the relevant circumstances surrounding the plea. *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984). The "ultimate question" is if the plea "was in fact voluntarily and intelligent." *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir. 1985). "The factual findings of a state court that the plea was proper generally are accorded a presumption of correctness" unless "the transcript is inadequate to show that a plea was voluntary and intelligent[.]" *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993). *See also Desmyther v. Bouchard*, 108 F. App'x 364, 366 (6th Cir. 2004) ("[A] federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process .... If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.")

Ward fails to show the state court determination was contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  The record reflects the trial court informed Ward of his constitutional rights and the consequences of waiving those rights; the court also described each charge and the maximum possible sentences.  (Doc. No. 6-1, Ex. 17, PageID # 203-12.)  The entirety of the exchange between Ward and the trial court leading up to and including the challenged portion of the plea hearing is as follows:

> The Court:      As I stated, Count 1 is a mandatory term of prison, so you cannot – I'm sorry.  You cannot receive community control on Count 1 under any possibility.  Do you understand that?
>
> The Defendant: Yes, ma'am.
>
> The Court:      If the court gave you what's called a split sentence, so that you went to prison on the mandatory term and then got community control on the balance, then the court could give you a community control sanction *on the other count*, felony of the first degree, for up to 5 years; but if you violate that sentence, you could receive a prison term.  Do you understand that?
>
> The Defendant: Yes, ma'am.

(*Id.* at PageID # 205-06) (emphasis added).

Following this colloquy, Ward entered a guilty plea to each charge.  (*Id.* at PageID # 207-09.)

The undersigned agrees with Respondent that the trial court's statement, when read in context, explained that community control was an option for sentencing on the kidnapping offense.  However, even if the undersigned construes the trial court's statement in a light most favorable to Ward, the fact remains that before Ward pled guilty the trial court again reiterated that he faced "a mandatory term of prison on the body of 3 to 10 years" for the rape offense and again asked Ward if he understood.  (*Id.* at 207.)  Ward stated he understood.  (*Id.*)

For all of the foregoing reasons, the undersigned recommends the Court deny Ground Two.

## VII. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED IN PART and

DENIED IN PART.

Date: November 1, 2021
          *s/ Jonathan Greenberg*
          Jonathan D. Greenberg
          United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**